IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NATHANIEL MITCHELL :
: CIVIL ACTION
v. :
: NO. 14-5026
COMMUNITY EDUCATION :
CENTERS, INC. :

**MEMORANDUM**

**SURRICK, J.**                                                             **AUGUST  11 , 2015**

Presently before the Court is Defendant Community Education Centers, Inc.'s Motion to

Dismiss and Motion to Strike (ECF No. 5).  For the following reasons, Defendant's Motion to

Dismiss will be granted in part, and denied in part, and Defendant's Motion to Strike will be

granted in part, and denied in part.

**I.      BACKGROUND**

      **A.      Factual Background[1]**

Plaintiff is an African American male who was formerly employed by Defendant

Community Education Centers, Inc. ("CEC") as a corrections officer.  He began working at the

George W. Hill Correctional Facility in 2003.  (Compl. ¶ 3, Notice of Removal Ex. 1, ECF No.

1).  Prior to his employment, Plaintiff received a degree in criminal justice from the Community

College of Philadelphia.  (*Id.* ¶ 6.)  Plaintiff was employed by CEC pursuant to a collective

bargaining agreement ("CBA"), which included a progressive disciplinary policy.  (*Id.* ¶¶ 12-13.)

---

[1] When considering a Rule 12(b) motion to dismiss, we "accept as true all allegations in
the complaint and all reasonable inferences that can be drawn therefrom, and view them in the
light most favorable to the non-moving party."  *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d
Cir. 1989) (citation omitted).

This disciplinary policy required CEC to impose lesser sanctions, when warranted, before ultimately firing an employee.  (*Id.* ¶ 13.)

In January of 2013, Plaintiff was terminated after hospital staff complained that he appeared lethargic while guarding a hospitalized inmate.  (*Id.* ¶ 5.)  There was no investigation into the matter and Plaintiff alleges that he was immediately terminated, despite the requirements of the progressive disciplinary policy.  (*Id.*)  Plaintiff was reinstated to his position 45 days later, after his union protested.  (*Id.* ¶ 6.)  Plaintiff did not receive back-pay as a result of his termination, but alleges that white officers who had similarly been wrongfully terminated were given back-pay.  (*Id.*)

Four days after Plaintiff's reinstatement, he was terminated again for falsifying documentation.  (*Id.* ¶ 10.)  After returning from their lunch break, employees must pass by an Ion Scan and must sign the sign-in sheet.  (*Id.* ¶ 8.)  A sergeant discovered graffiti on the sign-in sheet and the prison commenced an investigation.  (*Id.*)  The investigator could not locate Plaintiff's name on the sign-in sheet for that day and concluded that Plaintiff must have been the author of the graffiti.  (*Id.*)

More than one sign-in sheet was used that day and Plaintiff believed his signature was on the sheet that did not contain graffiti.  (*Id.* ¶ 9.)  The investigator was not originally aware of the existence of a second sheet, but stated he would look into it.  (*Id.*)  In addition, video footage for that day showed Plaintiff stop to sign his name and another officer stated that he observed Plaintiff sign his name.  (*Id.* ¶ 10.)  Plaintiff avers that although evidence existed to corroborate his story, he was again fired.  (*Id.*)  Moreover, Plaintiff alleges that the video footage from that day showed white correctional officers pass by the Ion Scan without signing in, and there is no record of disciplinary action being taken against those employees.  (*Id.*)

Plaintiff claims that continuous discriminatory acts against African American employees and prisoners occurred at the prison. It appears, however, that Plaintiff himself was the subject of, or a witness to, only a few of these acts. Plaintiff alleges that he was the subject of a random search that required him to strip off his clothing. (*Id*. ¶ 23.) He alleges that even though these searches are meant to be random, African American officers are disproportionately subjected to these searches. (*Id*. ¶ 22.) Plaintiff alleges that he was once suspended without pay for being sick for two days without presenting a doctor's note, whereas a white officer was never disciplined after being absent for nearly a week without proof of illness. (*Id*. ¶ 39.) Plaintiff alleges that over the course of eight years, he observed at least twenty instances in which African American prisoners were hogtied and their heads were used to open doors, resulting in injury to those prisoners. (*Id*. ¶ 67.) Plaintiff alleges that he observed a white officer beat an African American prisoner while the prisoner was handcuffed to a bed. (*Id*. ¶ 69.) Finally, Plaintiff alleges that, on at least one occasion, he witnessed a white sergeant spray an African American prisoner's face with pepper spray until the prisoner vomited. (*Id*. ¶¶ 72-73.) Plaintiff claims that, as a result of unfair treatment toward African American officers at the prison, he enjoyed less job security than similarly situated white officers. (*Id*. ¶ 76.)

As a result of the injuries that he sustained, Plaintiff demands judgment against Defendant in excess of $500,000, plus "administrative costs, attorney's fees, punitive damages, and whatever additional relief the Court may deem proper."

### B.      Procedural History

Plaintiff filed charges with the Pennsylvania Human Rights Commission and the Equal Employment Opportunity Commission on May 3, 2013. (Compl. ¶ 77.) The EEOC mailed a right to sue letter to Plaintiff on May 12, 2014. (*Id*.) Plaintiff initiated this action on August 11,

2014, by filing a Complaint in the Court of Common Pleas of Delaware County.  Defendant

removed the action to this Court on August 28, 2014.  (Notice of Removal.)

Defendant filed the instant Motion to Dismiss on September 4, 2014.  (Def.'s Mot., ECF

No. 5.)  Plaintiff filed a response in opposition to Defendant's Motion on September 18, 2014.

(Pl.'s Resp., ECF No. 15.)[2]

## II.   LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, "[a] pleading that states a claim for

relief must contain . . . a short and plain statement of the claim showing that the pleader is

entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12 provides for the dismissal of a complaint, in

whole or in part, for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P.

12(b)(6).  A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the

pleading requirements of Rule 8(a).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that

show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d

Cir. 2009).  Courts need not accept "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.  "While legal conclusions

can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at

679.  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply

---

[2] Defendant also filed a motion for sanctions, contending that Plaintiff's motion to remand (ECF No. 6) was frivolous, and that Defendant should be awarded fees and expenses for having to respond to it.  (ECF No. 16.)  On September 18, 2014, Plaintiff's motion to remand was denied.  (ECF No. 14.)  We will address Defendant's request for an award of sanctions in a separate order.

calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id*. at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679) (alteration in original).

## III.  DISCUSSION

Plaintiff's Complaint contains thirteen claims:  (1) Wrongful Termination (Count I); (2) Breach of Contract (Count II); (3) Unjust Enrichment (Count III); (4) Negligence (Count IV); (5) Gross Negligence (Count V); (6) Common Law Harassment (Count VI); (7) Emotional Distress (Count VII); (8) Discrimination under Title VII (Count VIII); (9) Discrimination under state law (Count IX); (10) Hostile Work Environment under Title VII (Count X); (11) Hostile Work Environment under state law (Count XI); (12) Retaliation under Title VII (Count XII); and (13) Retaliation under state law (Count XIII).  Defendant seeks dismissal of all thirteen claims.

### A.  Wrongful Termination (Count I)

Plaintiff alleges that he was wrongfully terminated by Defendant.  Defendant argues that Plaintiff was a member of a union during his time of employment which precludes him from

bringing this claim.  In Pennsylvania, courts have consistently held that "common law wrongful discharge suits cannot be brought by union employees subject to a CBA." *Ciferni v. Day & Zimmerman, Inc.*, 529 F. App'x. 199, 203 (3d Cir. 2013); *see also Phillips v. Babcock & Wilcox*, 503 A.2d 36, 37-38 (Pa. Super. Ct. 1986); *Coppola v. JNESO-Pocono Med. Ctr.*, 400 F. App'x 683, 684 (3d Cir. 2010) (relying on *Phillips* to conclude that "union employees subject to collective bargaining agreements may not pursue wrongful discharge claims against former employers"); *Wood v. Bethelehem Area Vocational Technical Sch.*, No. 12-4624, 2013 WL 2983672, at *12 (E.D. Pa. June 17, 2013), aff'd sub nom., *Wood v. Williams*, 568 F. App'x 100 (3d Cir. 2014) ("Because Wood was working under a collective bargaining agreement and was not an at-will employee, she cannot maintain a wrongful discharge action, and so we will dismiss this count of her complaint under Fed. R. Civ. P. 12(b)(6).").  In this case, Plaintiff concedes that his employment with Defendant was subject to a CBA.  (*See* Compl. ¶ 12.)  Accordingly, Count I will be dismissed.

### B.      Breach of Contract (Count II)

Plaintiff alleges that Defendant breached the CBA when Defendant bypassed the progressive disciplinary policy by immediately terminating Plaintiff without first imposing less severe sanctions.  Defendant argues that a union employee cannot state a claim for breach of a CBA against an employer.  In addition, Defendant points to a provision in the CBA that states that arbitration is the "exclusive and sole mechanism for the resolution of any grievances, disputes, disagreements, or claims made under or related to this Agreement or arising from employment at the facility."  (CBA §11.7.F, Def.'s Mot. Ex. F.)  Defendant argues that the arbitration provision bars this claim from being raised in this Court.

Three other courts in this district have had occasion to consider a breach of contract claim involving this same collective bargaining agreement for CEC employees. All three courts dismissed the plaintiffs' breach of contract claims, finding that the same arbitration provision within the agreement clearly states that grievance and arbitration procedures are the sole remedy for employment disputes. *See Siler v. Cmty. Educ. Ctrs., Inc.*, No. 14-5019, 2014 WL 4931291, at *5 (E.D. Pa. Oct. 2, 2014); *Blocker v. Cmty. Educ. Ctrs., Inc.*, No. 13-5127, 2014 WL 1348959, at *4 (E.D. Pa. Apr. 7, 2014); *Black v. Cmty. Educ. Ctrs., Inc.*, No. 13-6102, 2014 WL 859313, at *2-4 (E.D. Pa. Mar. 4, 2014). As the court in *Siler* observed, "the arbitration provision of the collective bargaining agreement clearly and unambiguously states that the grievance and arbitration procedures set forth herein are the exclusive and sole mechanism for the resolution of any grievances, disputes, disagreements or claims made under or related to this Agreement or arising from employment at the facility." 2014 WL 4931291, at *5 (internal quotation marks omitted).

Plaintiff argues that other language in the arbitration provision permits this claim to be adjudicated in court, as opposed to through the arbitration process. Specifically, Plaintiff points to language in the provision that states that "in cases where a statutory, non-contractual right is at issue, this provision does not prevent an Officer from pursuing an action in a court of law after first utilizing the grievance procedures stated herein." (Pl.'s Resp. 7 (quoting CBA).) However, this language does not apply here. Plaintiff clearly asserts a contractual claim—that Defendant breached the CBA by ignoring the progressive disciplinary policy contained therein. This is not

a statutory, non-contractual claim.  The language that Plaintiff identifies is not applicable.

Accordingly, Count II will be dismissed.[3]

### C.        Unjust Enrichment (Count III)

In Count III, Plaintiff alleges that Defendant received a financial benefit from terminating

Plaintiff's employment—not having to pay his salary—thus, entitling Plaintiff to recover for

unjust enrichment.  In support of its request to dismiss this Count, Defendant argues that Plaintiff

is precluded from bringing an unjust enrichment claim because he had a contractual relationship

with Defendant.  Plaintiff responds that it is premature to dismiss this claim until it has been

determined that remedies at law are adequate and complete.

Under Pennsylvania law, the doctrine of unjust enrichment does not apply in cases where

the parties have a written or express contract.  *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250,

1256 (Pa. 2005).  In this case, Plaintiff was employed pursuant to a CBA, the validity of which is

not in dispute.  Therefore, the nature of the relationship between the parties is contractual and the

doctrine of unjust enrichment does not apply.  *See Siler*, 2014 WL 4931291, at *6 (dismissing

unjust enrichment claim where neither party disputes that the CBA governing the employment

---

[3] Plaintiff also raises four other arguments in opposition to Defendant's request to dismiss the breach of contract claim.  First, Plaintiff contends that the "split cause of action doctrine" demands that the breach of contact claim be heard by this Court because the contractual claims arise from the same transaction or occurrence as those equitable, tort, and statutory claims.  (Pl.'s Resp. 8.)  Second, Plaintiff argues that the mandatory arbitration provision is ambiguous and therefore must be construed against the drafter—Defendant.  (*Id*. at 10.)  Third, Plaintiff contends that the arbitration provision is "impermissibly inconspicuous" and should therefore be disregarded.  (*Id*. at 11-12.)  Finally, Plaintiff states that Defendant should be collaterally estopped from arguing that arbitration is the exclusive remedy in light of an opinion from the Delaware County Court of Common Pleas.  (*Id*. at 13-14.)  These arguments have been rejected by three other District Courts confronted with nearly identical arguments.  *See Siler*, 2014 WL 4931291, at *5-6; *Blocker*, 2014 WL 1348959 at *4; *Black*, 2014 WL 859313, at *3-4.  Indeed, it appears as though Plaintiff's attorney, who was also the attorney in *Siler*, *Blocker*, and *Black*, simply filed the same pleading in opposition to the motions to dismiss in all four cases.  We agree with the conclusions reached in these cases, and need not further address Plaintiff's additional arguments.

relationship is valid, and "the issue here is not the validity of the [collective bargaining] agreement, but whether the agreement provides the exclusive remedy"); *Blocker*, 2014 WL 1348959 at *5 (dismissing unjust enrichment claim based on "well-settled law that a valid contract prevents claims for unjust enrichment"); *Black*, 2014 WL 859313, at *4 (dismissing unjust enrichment claim where validity of CBA is not in dispute). Accordingly, Plaintiff's unjust enrichment claim will be dismissed.

### D.       Negligence and Gross Negligence (Counts IV and V)

Plaintiff alleges in Counts IV and V that Defendant breached its duty of supervision when it "consciously disregarded the reported acts of discrimination, allowing the human rights of African American employees and prisoners to be severely compromised." (Compl. ¶ 97.) In support of its request to dismiss these claims, Defendant argues that Plaintiff failed to plead sufficient facts to establish both negligence and gross negligence. Defendant also argues that these claims are preempted by the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951, *et seq.* Plaintiff argues that he pled sufficient facts to make out these claims and does not address preemption by the PHRA.

We need not address whether Plaintiff alleged a sufficient factual basis to support these claims because even if he had, the claims are preempted by the PHRA. In Pennsylvania, "it is firmly established that negligent supervision claims arising out of discrimination cases . . . must be brought under the [PHRA]." *Randler v. Kountry Kraft Kitchens*, No. 11-474, 2012 WL 6561510, at *14 (M.D. Pa. Dec. 17, 2012) (citing cases); *see also Stell v. PMC Technologies, Inc.*, No. 04-5739, 2005 WL 2050297, at *2 (E.D. Pa. Aug. 24, 2005) (dismissing negligence claim based on a theory of negligent supervision as preempted by the PHRA when underlying claim is discrimination arising in employment context); *McGovern v. Jack D's, Inc.*, No. 03-

5547, 2004 WL 228667, at *7 (E.D. Pa. Feb. 3, 2004) (noting the "weight of authority cuts in favor of preemption with regard to negligent supervision claims").

Plaintiff's theory is that Defendant permitted human rights violations to occur against African American employees and prisoners.  These allegations sound in discrimination. Therefore, Plaintiff's negligence and gross negligence claims are preempted by the PHRA. Accordingly, Counts IV and V will be dismissed.

E.     **Common Law Harassment (Count VI)**

In Count VI, Plaintiff alleges that Defendant harassed Plaintiff "by engaging in a pattern of discriminatory and abusive behavior."  (Compl. ¶ 102.)  Plaintiff does not identify in the Complaint the legal theory or doctrine under which he brings this claim.  Defendant seeks to dismiss this claim, arguing that it is preempted by the PHRA.

"When there is no separate set of facts alleging intentional tortious conduct outside of a plaintiff's employment relationship with an employer, common law actions, including harassment, are preempted [by the PHRA]."  *Siler*, 2014 WL 4931291, at *7 (dismissing common law harassment claim as preempted by the PHRA).  The PHRA makes clear that when it is invoked, its remedies are exclusive.  *Wolk v. Saks Fifth Ave. Inc.*, 728 F. 2d 221, 223 (3d Cir. 1984).  The *Wolk* court has found that the procedures mandated in the PHRA must be strictly followed.  *Id.* at 223-24.  If common law actions for the same claims that are able to be brought under the PHRA were recognized, "it would give the claimant an opportunity to circumvent the carefully drafted legislative procedures" of the PHRA.  *Id.* at 224 (citation omitted).  The PHRA preempts any common law actions that allege facts associated with a prohibited form of discrimination, including harassment claims.  *See Hainan v. S & T Bank*, No. 10-1600, 2011 WL 1628042, at *2 (W.D. Pa. Apr. 27, 2011) (rejecting plaintiff's common law harassment claim

because plaintiff did not present a separate set of facts alleging intentional tortious conduct outside of plaintiff's employment relationship with defendant or other acts of discrimination.").

Plaintiff argues that "independent harassment allegations can exist outside of the context of the statutory cause of action." (Pl.'s Resp. 20.) Plaintiff gives examples: criminal harassment and contractual harassment. Neither of those types of claims applies to the allegations asserted by Plaintiff. [4] In this case, Plaintiff has not alleged a separate set of facts for intentional tortious conduct outside the scope of his employment relationship with Defendant. Therefore, this claim is preempted by the PHRA. Count VI will be dismissed.

**F.      Emotional Distress (Count VII)**

Plaintiff alleges that he suffered emotional distress and anxiety as a result of the negligent and intentional acts of Defendant. Defendant seeks dismissal of this Count, arguing that Plaintiff has failed to put forth sufficient allegations in the Complaint to support claims for negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED").

In Pennsylvania, the cause of action for NIED is restricted to four scenarios. The plaintiff must prove that: "(1) the defendant had a contractual or fiduciary duty to the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." *Siler*, 2014 WL 4931291, at *7 (citing *Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 217 (Pa. Super. Ct. 2012)). In addition, the Third Circuit has

---

[4] In fact, in the case that Plaintiff relies upon to support his "contractual harassment" theory, *King v. M.R. Brown, Inc.*, 911 F. Supp. 161, 168 (E.D. Pa.1995), the court actually dismissed the claim as preempted by the PHRA. *See id.* ("The PHRA also preempts common law claims for breach of contract when the only act that would support the common law claim is the act of discrimination.").

concluded that in order to successfully plead NIED in Pennsylvania, a plaintiff must demonstrate that there is a "manifestation of physical impairment from the distress or some type of resulting physical harm due to the defendant's outrageous conduct." *Greene v. City of Phila.*, No. 11-5356, 2012 WL 4462635, at *3 (E.D. Pa. Sept. 26, 2012) (internal quotation marks and citations omitted).

In this case, Plaintiff does not indicate which theory of NIED he is claiming. The first theory, requiring that a defendant have a contractual or fiduciary duty to the plaintiff, is the most plausible theory that can be applied based on the facts that Plaintiff has alleged. When claiming this theory of NIED, courts have stated that it should be limited to special relationships that "encompass an implied duty to care for the plaintiff's emotional well-being." *Weiley*, 51 A.3d at 218 (quoting *Toney v. Chester Cnty. Hosp.*, 36 A.3d 83, 95 (Pa. 2011)). In *Siler*, the court concluded that "Plaintiff's contractual relationship with CEC, as a former employee of the Prison, is insufficient under Pennsylvania law to qualify as this type of 'special relationship.'" 2014 WL 4931291, at *7. In addition, Plaintiff has not alleged that he has suffered any physical harm or impairment due to his distress. Accordingly, Plaintiff's NIED claim will be dismissed.

The elements of IIED are: "(1) a person who by extreme and outrageous conduct (2) intentionally or recklessly causes (3) severe emotional distress to another." *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010). When presented with an IIED claim, the court must determine whether the plaintiff has made a threshold evidentiary showing that the defendant's conduct was extreme and outrageous. *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1274 (3d Cir. 1979).

To the extent that Plaintiff bases this claim on allegations that he was unfairly discriminated against by Defendant, the claim fails. Allegations of discrimination alone are not

sufficient to meet the outrageous requirement. *Whitaker v. Firman & Ohm Entm't, Inc.*, No. 12-224, 2013 WL 4498979, at *6 (W.D. Pa. Aug. 20, 2013); *Lei Ke v. Drexel Univ.*, No. 11-6708, 2013 WL 1092661, at *13 (E.D. Pa. Mar. 14, 2013) ("Alleged racial discrimination alone does not demonstrate the requisite outrageous and extreme conduct necessary to prove intentional infliction of emotional pain and suffering."); *Siler*, 2014 WL 4931291, at *7.

However, Plaintiff's Complaint contains many allegations about egregious acts committed by prison guards against inmates. Some of these are acts Plaintiff witnessed. Many of them are not. The acts for which he was not present cannot support his IIED claim. *See Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000) (concluding that to maintain an IIED claim, the plaintiff must be present at the time of outrageous conduct directed at a third party who is not the plaintiff's immediate family member). Plaintiff's claim based on the acts he did witness also fails, however, because the Complaint is devoid of any allegations about Plaintiff's resultant harm. When a defendant directs outrageous conduct at a third party who is not the plaintiff's immediate family member, the plaintiff must suffer bodily harm to state an IIED claim. *Id.* Plaintiff alleges merely that Defendant's acts caused "emotional distress and anxiety." (Compl. ¶ 107.) Nowhere does Plaintiff allege any physical manifestations of this emotional distress. Therefore, Plaintiff fails to make out a claim for IIED. *See Doe v. Schneider*, 667 F. Supp. 2d 524, 533 (E.D. Pa. 2009) (dismissing plaintiff's claim for intentional infliction of emotional distress because the complaint did not allege any bodily harm on a non-family member as a result of the outrageous conduct). Accordingly, Count VII will be dismissed.

### G.    Discrimination (Counts VIII and IX)

Plaintiff alleges that the treatment he received while employed by CEC, as well as the two instances in which he was terminated, are the result of race discrimination in violation of

13

Title VII (Count VIII) and the PHRA (Count IX).  Defendant argues that this claim is time-barred and that Plaintiff has failed to provide sufficient allegations to support this claim.

### 1.  Plaintiff's Claim is Timely

When the Equal Employment Opportunity Commission ("EEOC") issues a right-to-sue letter, as was issued to Plaintiff, the recipient has 90 days to file a complaint in a federal court. 42 U.S.C. 2000e-5(f)(1).  The statute does not provide a method of computing time.  When a statute does not specify a method of computing time, Federal Rule of Civil Procedure 6(a)(1)(C) applies, which states that when the last day of the period falls on a "Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."

Defendant argues that Plaintiff did not file a timely Complaint because the Complaint was filed 93 days after the EEOC's right-to-sue letter was issued.  Plaintiff argues that his Complaint was timely, because the last day of the period fell on Saturday, August 9, 2014, which extended his filing period until Monday, August 11, 2014.  Plaintiff notes that although the time stamp on the Complaint reflects a date of August 12, 2014, the Complaint was docketed on August 11, 2014.  The Court has reviewed the state court docket and confirms that Plaintiff is correct:  the Complaint was in fact docketed on Monday, August 11, 2014.  The Complaint was timely filed.

### 2.  Plaintiff Sufficiently States a Discrimination Claim

Defendant also argues that Plaintiff has failed to allege sufficient facts to make out claims for discrimination under Title VII or the PHRA.[5]

---

[5]  We analyze Plaintiff's PHRA claims under the same legal standards as his Title VII claims.  *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) ("Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.").

14

To establish a *prima facie* case for employment discrimination under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the position he sought to attain or retain, (3) he suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013). An inference of discrimination arises if Plaintiff alleges facts showing that similarly situated individuals outside his protected class were treated more favorably than he was. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 273 (3d Cir. 2010).

In this case, the first three elements of Plaintiff's discrimination claim are not in dispute. Plaintiff is an African American, and is therefore a member of a protected class. He is qualified for his former position with the CEC. And, he suffered an adverse employment action when he was terminated. Therefore, our discussion focuses on the fourth element—whether Plaintiff's termination could give rise to an inference of discrimination.

Although Plaintiff alleges many instances of racial discrimination for which he was not present, he also points to several instances in which white corrections officers were treated more favorably than he was for engaging in similar conduct. For example, Plaintiff alleges that white officers were not disciplined for failing to sign in after their lunch break, and that Plaintiff was terminated for doing the same. In addition, Plaintiff alleges that white officers who had been erroneously terminated received back-wages, whereas Plaintiff never received back-wages after being erroneously terminated himself. We are satisfied that Plaintiff has alleged sufficient facts to state a plausible claim for race discrimination under the PHRA and Title VII. Accordingly, Defendant's Motion to dismiss Counts VIII and IX will be denied.

15

H.      **Hostile Work Environment (Counts X and XI)**

Plaintiff alleges that based on his race, Defendant created and permitted a hostile work environment to exist against Plaintiff in violation of Title VII (Count X) and the PHRA (Count XI).  Similar to the arguments in support of dismissing the discrimination claims, Defendant contends that these claims are time-barred and that Plaintiff did not plead sufficient allegations to support this claim.  In addition, Defendant argues that Plaintiff has not exhausted his administrative remedies because this claim does not fall within the scope of his EEOC charge. We determined that Plaintiff's Complaint was timely filed.  Therefore, our analysis will focus on Defendant's remaining arguments.

1.      *Plaintiff Exhausted His Administrative Remedies*

Defendant argues that Plaintiff's EEOC charge only alleges discrimination in violation of Title VII and that a hostile work environment claim is not fairly pleaded within the scope of this charge.

When filing suit under Title VII, a plaintiff must first exhaust administrative remedies by filing charges with the EEOC within 180 days of the alleged discriminatory act.  29 U.S.C. § 626(d).  "The ensuing suit is limited to claims that are within the scope of the initial administrative charge."  *Twillie v. Erie Sch. Dist.*, 575 F. App'x 28, 30-31 (3d Cir. 2014). "[O]nly those acts alleged that are 'fairly within the scope of the prior [administrative] complaint, or the investigation arising therefrom' are considered to have been exhausted." *Spindler v. Se. Pa. Transp. Auth.*, 47 F. App'x 92, 94 (3d Cir. 2002) (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)); *see also Fleming v. Kramont Emp'r Royce Realty, Inc.*, 2002 WL 1964257, at *2 (E.D. Pa. Aug. 16, 2002) ("The appropriate test for whether a plaintiff has failed to exhaust her administrative remedies is not whether the judicial complaint mirrors the

16

plaintiff's earlier administrative complaint, but rather 'whether the acts alleged in the subsequent . . . suit are fairly within the scope of the prior EEOC complaint.'") (quoting *Antol*, 82 F.3d at 1295).

Here, Plaintiff's EEOC charge does not specifically state a claim for hostile work environment.  However, the facts supporting both his discrimination and retaliation claims are undoubtedly the same facts that will be used in analyzing a hostile work environment claim.  In his EEOC Charge, Plaintiff alleges multiple discriminatory acts against Defendant, including being terminated for "appearing lethargic," and again being terminated for being wrongly accused of placing graffiti on a sign-in sheet.  Plaintiff also alleges that he was subjected to a random strip search, and that he witnessed incidents of racially-motivated mistreatment of African American prisoners and employees.  Based on the facts alleged, a hostile work environment claim is fairly within the scope of the EEOC complaint.

### 2. *Plaintiff Sufficiently States a Claim for Hostile Work Environment*

Defendant also argues that Plaintiff has pled insufficient facts to sustain a hostile work environment claim.  To succeed on a hostile work environment claim, a plaintiff must establish that:  (1) he suffered intentional discrimination because he is a member of a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) respondeat superior liability exists.  *Mandel*, 706 F.3d at 167.  The court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 168.

Specifically, Defendant argues that Plaintiff failed to plead facts demonstrating that the discrimination was "pervasive and regular."  (Def.'s Mot. 15.)  As discussed above, Plaintiff has alleged multiple acts of intentional discrimination based on his race, such as two terminations, not receiving back-pay when other white officers did, being wrongfully accused of conduct, and being subjected to a strip search.  At this stage of the litigation, we are satisfied that Plaintiff has alleged sufficient facts to support pervasive and regular discrimination towards him and other African American corrections officers.  When considering the totality of the circumstances, we find that Plaintiff has stated a plausible claim for hostile work environment.  Accordingly, Defendant's Motion to dismiss Counts X and XI will be denied.

## I.      Retaliation (Counts XII and XIII)

In Counts XII and XIII, Plaintiff alleges that Defendant retaliated against him based on his race, in violation of Title VII and the PHRA.  Defendant makes three arguments in support of dismissing the retaliation claims:  (1) that the claims are time-barred; (2) that Plaintiff has not exhausted his administrative remedies because the retaliation claims are not within the scope of his EEOC charge; and (3) that Plaintiff has not pled sufficient allegations to support retaliation claims.  We have determined that the claims are not time-barred.  *See supra* at Section II.G.1. With regard to Defendant's exhaustion argument, a review of Plaintiff's EEOC charge reveals that retaliation claims come within the scope of the charge.  Significantly, the EEOC Charge is titled "Charges of Illegal Racial Discrimination and Retaliation."  (EEOC Charge, Pl.'s Resp. Ex. 1.)  Plaintiff has exhausted his administrative remedies with respect to his retaliation claims.

Finally, Defendant argues that Plaintiff has failed to allege sufficient facts to state a claim for retaliation.  To establish a *prima facie* case for Title VII retaliation, a plaintiff must show that: (1) he engaged in a protected activity under the statute; (2) his employer took an adverse

18

employment action against him; and (3) there was a causal connection between his protected

activity and the adverse employment action. *Giddens v. UPS Supply Chain Solutions*, 2015 WL

4290617, at *1 (3d Cir. July 16, 2015); *see also Moore v. City of Phila.*, 461 F.3d 331, 340-41

(3d Cir. 2006).

 Here, it is not disputed that Plaintiff suffered an adverse employment action; he was

terminated on two occasions.  Plaintiff does not specifically allege in his Complaint what type of

protected activity he engaged in that generated Defendant's retaliatory actions.  Plaintiff filed his

EEOC charge on May 3, 2013, over three months after he was terminated for the second time on

February 28, 2013.  Because the act of filing the charge occurred after the adverse employment

activity, it cannot be considered protected activity for purposes of Plaintiff's *prima facie* case.

However, Plaintiff also alleges that after being terminated the first time, his "union protested the

illegal termination and Plaintiff was reinstated to his position 45 days later."  (Compl. ¶ 6.)

Union involvement and protest can qualify as protected activity under Title VII.  *See, e.g.*,

*Simmons v. Cmty. Educ. Ctrs., Inc.*, No. 15-929, 2015 WL 1788712, at *3 (E.D. Pa. Apr. 20,

2015) (finding that union representatives complaints about race discrimination constituted a

protected activity for purposes of retaliation claims).  Finally, with respect to the causal

connection between this protected activity and the adverse employment action, Plaintiff alleges

that he was terminated a second time only two months after his union complained about the first

termination, and only four days after his return to work.  The temporal proximity of his second

termination, together with the pattern of antagonistic acts against him and other African

American corrections officers, is sufficient at a motion to dismiss stage to state a claim for

retaliation.  *See Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) ("To establish the

requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive

temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.").  Accordingly, Defendant's Motion to dismiss Counts XII and XIII will be denied.

## IV.   MOTION TO STRIKE

### A.   Legal Standard

In its Motion, Defendant also asks the Court to strike several Paragraphs of the Complaint, arguing that they are "scandalous and impertinent allegations" that only serve to "cast a negative light on Defendant CEC."  (Def.'s Mot. 17-19.)  Rule 12(f) of the Federal Rules of Civil Procedure states that a court "may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike function "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."  *McInerney v. Moyer Lumber & Hardware*, *Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).  Motions to strike are generally disfavored by courts and will be denied unless the allegations "have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case."  *Natale v. Winthrop Res. Corp.*, No. 07-4686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008) (internal quotation marks omitted).

### B.   Discussion

Defendant specifically asks the Court to strike Paragraphs 56-57, 59, and 61-74 of the Complaint.  Many of these Paragraphs are irrelevant to the claims asserted.  For this reason, we strike Paragraphs 57, 59, 61-66, 68, 70-71, and 74.  *See, e.g.*, *Kwaning v. Cmty. Educ. Ctrs., Inc.*, No. 15-928, 2015 WL 1600068, at *7 (E.D. Pa. Apr. 8, 2015) (striking irrelevant paragraphs from complaint asserted against CEC for race discrimination).  Because Plaintiff "witnessed" the

acts described in Paragraphs 56, 67, 69, and 72-73, we will not strike these allegations at this time.

## V.        CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be granted in part, and denied in part.  Defendant's Motion will be granted with respect to Count I (wrongful termination), Count II (breach of contract), Count III (unjust enrichment), Count IV (negligence), Count V (gross negligence), Count VI (common law harassment), and Count VII (emotional distress).  Defendant's Motion will be denied with respect to Count VIII (discrimination under Title VII), Count IX (discrimination under the PHRA), Count X (hostile work environment under Title VII), Count XI (hostile work environment under the PHRA), Count XII (retaliation under Title VII), and Count XIII (retaliation under the PHRA).  In addition, Defendant's Motion to Strike will be granted in part, and denied in part as indicated.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**